Thank you. Good morning, and may it please the court. I'm William Eichelman, and I represent the appellant Eddie Ray McClendon in this appeal from his conviction from the unlawful possession of a firearm. I think the facts in this case are fairly simple and straightforward. There was a 9-1-1 call on in the early morning hours of April 1st, 2011 that sent the police to a residence in rural Pierce County, Washington. The person who made the call indicated that there was a car that he didn't recognize parked in his driveway. Somebody had been pounding on his door, and he was an elderly gentleman. He was afraid and called 9-1-1 for help. When the police arrived, they found a car parked in the driveway, and as the officer pulled up, a car, she was the only one there, and the police had a contact with her and obtained her consent to search the vehicle. They executed a search of the vehicle, and the primary items that they found in the vehicle were her purse, a backpack, a machete on the floor of the vehicle. They felt that she looked like she might be under the influence of drugs, and the search of her purse revealed contraband, and they asked her about the backpack. She told them that the backpack did not belong to her, but belonged to her companion. They searched the backpack, and in the backpack discovered a short shotgun, ammunition, and a variety of other items of a suspicious nature. She indicated the backpack belonged to her companion, Mr. McClendon. Mr. McClendon wasn't present at the time that all of that occurred. As a result of what was found in the backpack, the officer did a background search on Mr. McClendon, was told that he had several felony convictions, and determined at that point that he had probable cause to arrest Mr. McClendon, so he asked for backup. A K-9 unit and other police officers responded, and they went looking for Mr. McClendon. They found him a short time later, and they asked him if he was Mr. McClendon, if he was Eddie McClendon. He said yes, he was. They told him he was under arrest, drew their guns, pointed their guns at him. He turned away from them and appeared to reach into his waistband, probably not the smartest thing to do under the circumstances, but when they finally apprehended him, which was a short time later, and took him to the ground, short distance away, they found a handgun lying in the grass. The officer testified that it was a cold night, but the handgun was still warm to the touch. So let me ask you, in this scenario you just laid out, when was he seized by the officers? Well, I believe that he was seized by the officers when they told him he was under arrest and they pointed their guns at him. I think at that point he was seized. Well, they didn't ask, but he didn't, he walked away from them though, correct? Well, he turned away from them so they wouldn't see him toss the handgun. The testimony was that he continued walking. He didn't run away. There was no chase that ensued. I think he simply turned his body away so they wouldn't see him. Did they point their guns at him when they said you're under arrest? That's what the testimony, they drew their guns. And told him he was under arrest. And he didn't heed their authority, did he? Well, yes and no. He didn't run. He didn't put, throw his hands up in the air and drop to his knees, if that's what you mean. Well, let me ask you this. Are you familiar with Hodari D? Yes. Why doesn't that apply here? Well, Hodari D was a situation where the police were on patrol and they saw a group of young men in Oakland who looked like they were up to no good. So they went to investigate what was going on. And as they approached, the young men took off. A chase ensued with an officer in a patrol car, another officer on foot. Hodari D was looking behind him to see how close the pursuer was. And he almost ran into another police officer. Before he was tackled and taken down by that police officer who was on foot, he tossed a rock, what appeared to be a rock that later turned out to be cocaine. Hodari D was a case that was clearly an attempt to execute a Terry stop to have an encounter with these youths to find out what they were doing. McClendon, on the other hand, was clearly an arrest situation. The officer had decided he was going to arrest McClendon. He testified that was his intention. Is it your position that there was probable cause to arrest him? Well, there was probable cause to arrest McClendon, but it was obtained illegally. Okay. Well, let me ask you a question about that. That relates to the suppression hearing. So there was definitely cause to arrest him based on what was in the backpack. But Judge Bryan excluded that. That's correct. It was an unlawful product of unlawful search. So under Wong-Sun, if the arrest is a fruit of that, then your theory is that would not be a valid arrest. Okay? Yes. But the officers also, arguably at least, had cause to arrest him for trespassing in the driveway or for ownership of the part of the drugs or paraphernalia that the woman, Ms. Johnson, said didn't belong to her. Arguably. I thought the officer at the hearing, at the suppression hearing, testified he would have gone to arrest, gone to talk to Johnson regardless of what was in the backpack if they hadn't looked at it. I believe his testimony was that he made the decision to arrest McClendon after he found out he had felony convictions. He already knew what was in the backpack at that point. And the arrest decision wasn't based... Did he have probable cause, counsel? Did he have probable cause to arrest for trespass? Well, that's a good question, whether pulling your car into somebody's driveway constitutes trespass. He wasn't the driver of the vehicle. He wasn't the driver of the vehicle. He wasn't... Passenger, right? Well, he wasn't present when the police arrived, but presumably he was the passenger. So what's criminal trespass here in Washington? It's going unlawfully upon someone else's property. Is it a misdemeanor or a felony? It can be either, depending on... Was this a felon? Was this... I think that worse would have been a misdemeanor. And does the officer have to be present when the misdemeanor is committed? Under Washington law, an officer should, I believe, has the authority to arrest if he sees a misdemeanor committed, unless he's investigating a traffic accident. That's an exception. So is it your position, then, that there was probable cause to arrest him for a criminal trespass here? No. When, what's his name, when McClendon was not even on the property? He wasn't there, and all the... The vehicle had pulled into the driveway, and I, you know, I don't believe that in itself constitutes a trespass. And even if it does, you're right, he wasn't there. The officer didn't see him there. He had left. Do you want to save some time for rebuttal, Arthur? Yes. Thank you. Good morning. May it please the court. I think the, my name is Helen Bruner, and I'm here to represent the United States. The issue, I think, in this case, although we devoted a lot of the government's brief on the issue of whether there was reasonable suspicion for a Terry stop independent of the backpack, I think the case can easily be decided, in this case, by the application of Hogari D, because Mr. McClendon was not under arrest at the time that he threw the gun on the ground. Just to back up once, you never, the government didn't argue that there was probable cause here to arrest him for criminal trespass or for. No, we didn't. The possession of drugs or drug paraphernalia, and that's not your, that's not the government's position, is it? No, the government's position was basically that the facts giving rise, the facts of the event gave rise, certainly, to reasonable suspicion for a Terry stop independent of the backpack. But I think when you look at what is, what are the undisputed facts of this case, it is clear that he was not under arrest when you take a look at the teachings of Hogari D and the cases that come after. What the officers testified to is that they saw him approximately 50 to 60 yards away from them. As they got closer, they asked him whether he was Eddie McClendon. He says yes, and then he turns away. They tell him he's under arrest and tell him to show his hands. He doesn't do that. Instead, he continues to walk, they describe it as a westerly direction away from them. And then they watch him move his hands to his waistband and toss what later is the gun. And so it isn't until they basically tackle him, bring him to the ground, and put him in handcuffs that he is under arrest. So whether they had intended at that point, and I think the testimony is clear that they went forward looking for him in large measure because they knew what was in the backpack, but I think you can also look at the other facts. The fact that it's 2.30 in the morning, they're parked in the driveway, they knock on the door of this gentleman's house, frightening him. There's drugs in the car, there's the machete under the seat. I know counsel would argue that yes, they didn't ask for his criminal history until after the backpack was found. But I think you could definitely see that under those circumstances, they would have asked whether they had looked in that backpack or not and gone to look for him. Particularly when the story is that the car is run out of gas and yet the car turns over when they turn on the car. When the officer said you're under arrest, they had their weapons out. They did. Is that a seizure? I don't believe it is. I think that Hodari D makes clear that if the person does not comply with the officer's direction, then it is both the show of authority and compliance that brings about the seizure. In this case, yes, he didn't run, but he also didn't comply. He turned, he walked away, and continued to walk away from the officers even though they told him to put his hands up. So there's nothing here on the facts of this record which would suggest that he was complying with the show of authority. And I think under Hodari D and this court's decision in Smith, he was not in custody. How does Smith relate to Hodari D? It applies, Hodari D, in a slightly different set of circumstances. It's a case where the defendant was crossing the street in front of the police car. The officer called for Smith to stop. He momentarily stops and then doesn't comply with the officer's direction to when he trips and falls, and that's when the firearm is found. It's different in the sense that the firearm was not abandoned, but the question in Smith was whether or not Smith was in custody at the time that he was told to stop and stand in front of the car, or at least detained at that point. Are you familiar with a case called United States versus Garcia? Your Honor, I'm pausing because I'm familiar with some United States versus Garcia- I can't deal with attenuation, assuming the stop was illegal and intervening in circumstances. And were they put under a secondary stop? Indirectly, Your Honor, yes. Were they put under a secondary stop or secondary, and then the guy takes off? Yes, Your Honor. And I think in this case, Smith as well deals with some of that, and some of the other cases of this court deal with that. It isn't, again, we're not, where the person stops temporarily to answer a question, it doesn't necessarily mean that the person is in custody if the person then goes to the police. And this case, we don't even have that temporary stop, because he's asked if he's Eddie McClendon before they say you're under arrest. So in Garcia, it was a- Go ahead, Judge Fisher. He turns around and he walks, he's not running, but then he throws what turns out to be the gun. Now, your position on once he throws it, it's fair game for the police to go find out what it was and use that for the basis of further action against him? Yes, it is, Your Honor, because- Even if it's a, let's suppose they didn't have probable cause to stop him or to arrest him for trespass, so just stop at that point. In other words, they say, you're under arrest, we've got our guns on you. He's, any normal person would feel he was in custody, even if he turns around and walks away from it. And as he walks away, he does it, he turns, as counsel suggested he did, he turned so he could reach in and toss the gun. Is it your position if that was an illegal arrest, nonetheless, the fact that he threw the gun, there's no problem? It is, Your Honor, and I think Hodari D is instructive on that. And the reason I point to Hodari D is because the concession by the state of California and Hodari D was that there was not even reasonable suspicion to start the chase. So if you didn't have reasonable suspicion for the Terry stop, and under those circumstances, the defendant is not in arrest, under arrest or detained until he is physically stopped. And the show of authority in chasing him was not enough to place him in detention. I think the facts here are the fact that they are trying to effect an arrest. He wasn't under arrest until he was stopped, because he did not, because he walked away. It seems as though, I know that there were other items in the vehicle and they learned certain things, but it sure looks like when they saw what was in that backpack, that was the event that really precipitated them to go after Mr. McClendon. No question, Your Honor, and I don't mean to suggest that it wasn't. When I say that the other facts were sufficient to give them reasonable suspicion to go look for Mr. McClendon, that's with full knowledge that, of course, that backpack was suppressed as a result of the district court's ruling, and we did not appeal that ruling. So the reason why I mentioned Garcia and Judge Fisher chimed in on it was, that was a case that took place at the checkpoint in San Clemente, California, coming up from the border. Yes, Your Honor. And the guards at the checkpoint directed this particular vehicle, Mr. Garcia's vehicle, to go over to secondary. He goes over to the secondary location, and everybody agrees that the stop was unlawful. They just assume that it's unlawful. Goes over to secondary, and he gets over there. When he gets there, he takes off. He speeds away, and then a chase ensues, and they catch him. When they catch him, he's an undocumented, and they find marijuana in his trunk, or some drugs in his trunk. And in Garcia, we said that that subsequent event, the intervening event of him speeding away, sufficiently attenuated, was sufficiently apart from the unlawful stop. And therefore, it was sufficient, the drugs could be admitted into evidence. There was an attenuation. I understand, Your Honor. So is that what happened here? Does that same principle apply here? I suppose to the extent that his walking away, that you assume that he was already in custody at the time that they draw the guns and say, you're under arrest, please put your hands up. It certainly is that he walks away from them. He clearly knows that they are seeking to arrest him, and he walks away. So it can be certainly analogized to speeding away, but I would say as well that the government's position is that he was not even under arrest until the point at which he submitted to their authority. Either way, I think the gun is abandoned, and we would ask the court to affirm the disreport. Okay. Okay, thank you. Well, your time is up, so we'll hear a rebuttal argument, if I may. Okay, just briefly in rebuttal, I want to say that in the United States v. Stevens, a 2000 case, this court held that an abandonment must be voluntary, and an abandonment that results from a Fourth Amendment violation cannot be voluntary. And if you go back to Wong Sung, which I think is not cited in the government's brief, the language in that case says, granting establishment of the primary illegality. And again, that's the search of the backpack, which the government didn't challenge when the district court suppressed the evidence from that search. The evidence to which instant objection is made has come at by exploitation of that illegality, or instead by means sufficiently distinguishable to be purged of the primary taint. I think unlike the Garcia case that you discussed, this case does not involve a running away or a chase. You can look at any set of facts and break it down when you're Monday morning quarterbacking, I suppose I would say. But- Well, he didn't comply. There's nothing Monday morning quarterbacking about that. He didn't- Well, he didn't- He walked away. He didn't instantly comply. He turned away and tossed the gun. Now, if he wouldn't have done that and they had simply arrested him and found the gun in a subsequent search of his person, we'd be having a different argument, although I think the result would be the same. The government says that he's not arrested until they take him to the ground. But if you're not under arrest when officers draw their guns and tell you you're under arrest, I don't know when you ever are. I think that's sufficient. What about, and I'm taking you a little over your time, but there's a Supreme Court case called Wren that I think suggests, W-H-R-E-N, that the subjective motives of the officers don't matter. No, but their conduct does. Right, so if they had a right to just, if not to arrest him, to talk with him. You know, when there was gas, the car would start even though there was the story about it being out of gas and the machete in the car and everything. But if they could stop and talk with him, so they would approach him, even though they characterized it as an arrest, you're under arrest, why wouldn't the Terry Stop rules apply? And to say that if there was reasonable suspicion, they could confront him. And then when he turns and walks away, then they have the ability to stop him. Because it wasn't a Terry Stop, it was an arrest. They intended to arrest him, they went out to arrest him, they were looking for him to arrest him. They had already decided to arrest him. And that's only logical because of what they found in the backpack and the background check that they did. They had absolutely good reason to believe that he was a felon in possession of the shotgun when they went looking for him. That, you don't usually, I don't think, attempt to execute a Terry Stop by hunting somebody who's not present, by using a canine to try to track them. That's indicia of an arrest. Okay, very good. Thanks, Mr. Michaelman, I appreciate it. Thank you. Then that case shall be submitted unless any other judge has a question. The United States versus Eddie Ray McClendon is submitted. And we thank counsel for appellant and appellee for their illuminating and strong arguments.
judges: Fisher, Gould, Paez